UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GREGORY S. WILLIS,

    Plaintiff,

v.

GARY MOHR, *et al.*,

    Defendants.

Case No. 1:11-cv-808

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

.    Plaintiff Gregory S. Willis initiated this action by filing a *pro se* complaint against defendants Gary Mohr, Tim Brunsman, Dan Hudson, Dave Hoffman, Jody Sparks, Robert Green, and Anthony Kahn (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. (Doc. 3). Plaintiff's complaint contains eleven claims arising from Defendants' alleged indifference to fire safety at Lebanon Correctional Institution and to how putting him on fire watch duty adversely affected his health as a diabetic. *Id.* This action is now before the Court on Defendants' Motion for Summary Judgment and responsive memoranda (Docs. 14, 16, 17).)[1] For the following reasons, Defendants' motion for summary judgment should be granted.

**I. Background**

Plaintiff is a prisoner of the State of Ohio, incarcerated at Lebanon Correctional Institution ("LeCI"). Defendants are Gary Mohr, Director of the Ohio Department of

---

[1]Two non-dispositive motions are addressed by separate Order.

Rehabilitation and Correction ("ODRC"); Tim Brunsman, former LeCI Warden; Dan Hudson, LeCI Institutional Inspector; Dave Hoffman, a Unit Manager at LeCI; and Jody Sparks, Robert Green, and Anthony Kahn, Lieutenants at LeCI. (Docs. 3, 14).

Plaintiff's complaint contains allegations involving LeCI's fire safety procedures over the time period of February 2009 through October 2011.[2] He alleges that on (mostly) unspecified dates, he was put on fire watch duty, which required him to walk for extended periods of time. (Doc. 3 at 5). Although Plaintiff was concerned about fire suppression and protection in the prison, he was also concerned that being forced to do fire watch duty would dangerously lower his blood sugar levels as a diabetic. *Id.* He claims that Defendants were "negligent" and indifferent to this risk. While mere negligence is insufficient to state a claim against any defendant under 42 U.S.C. §1983, deliberate indifference to a serious medical need can state a claim.

Plaintiff alleges that he submitted three informal complaints concerning his assignment to fire watch duty, dated July 1, 2011 (Doc. 14. Ex. 1), July 7, 2011 (Doc. 14, Ex. 2), and August 23, 2011 (Doc. 14, Ex. 3). All three informal complaints were responded to in a timely manner. *Id.* In his last (August 23, 2011) complaint, Plaintiff asks where he can find AR 5120-9-31. *Id.* Plaintiff also filed a Direct Grievance with Chief Inspector Croft dated August 10, 2011, but received on October 28, 2011.[3] (Doc. 14, Ex. 4). Plaintiff filed his federal complaint on November 15, 2011 (Doc. 1). Chief Inspector Croft decided Plaintiff's direct grievance the next day, on November 16, 2011

---

[2]Plaintiff references just two specific dates, June 26, 2011 and July 2, 2011, on which he was assigned to fire watch duty. Defendants have captioned their motion for summary judgment as a "First" such motion, limited to the issue of exhaustion. Defendants implicitly reserve the right to file an additional motion following discovery if necessary. Among the many affirmative defenses asserted by Defendants is the statute of limitations.

[3]This time gap is not explained, but does not affect the disposition of the present motion.

2

(Doc. 14, Ex. 5).

## II. Analysis

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

### B. Defendant's Motion for Summary Judgment

#### 1. Plaintiff Failed to Comply with Applicable Grievance Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C §1997e, *et seq.*, requires a prisoner to exhaust all available state administrative remedies before filing suit in federal court to challenge conditions of his confinement. *Woodford v. Ngo*, 548 U.S. 81, 84

3

(2006). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Thus, exhaustion is a mandatory prerequisite to a prisoner filing a civil rights lawsuit in federal court. What constitutes proper exhaustion is defined by the state prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 211, 218 (2007). "Failure to exhaust is an affirmative defense under the PLRA." *Id.* at 216. Defendants bear the burden of proving the failure of a prisoner to properly exhaust all available administrative remedies. *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Because Plaintiff proceeds *in forma pauperis*, his complaint was subjected to initial screening to determine whether it should be dismissed as frivolous, malicious, or for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). As part of that process, the Court explained that *sua sponte* dismissal is appropriate "where it is apparent from the face of the complaint that an inmate has to exhaust the prison grievance procedure. (Doc. 6 at 4). Although the Court expressly noted that "it appears that an exhaustion issue exists as to some or all of plaintiff's claims," the Court declined to dismiss this case *sua sponte* because it was "unable to make a definitive ruling on the exhaustion issue" at the screening stage. (Doc. 6 at 5).

Defendants' motion for summary judgment now provides definitive evidence concerning Plaintiff's failure to exhaust. As discussed more extensively below, two separate grievance procedures are implicated in Plaintiff's claims, with a three-step process applicable for claims against most prison employees, and a second set of

4

procedures applicable to claims against a warden or inspector. Technically, Plaintiff does not dispute Defendants' evidence that he failed to exhaust his remedies with respect to any of the Defendants. Therefore, Defendants have met their burden of production under Rule 56, shifting the burden back to Plaintiff to present significant probative evidence to defeat their motion for summary judgment.

### 2. Whether Plaintiff Is Excused From the Exhaustion Requirement

In order to meet his burden, Plaintiff argues that Defendants "knowingly and deliberately veil[ed] the steps needed to properly exhaust all available administrative remedies." (Doc. 15). In this respect, Plaintiff appears to contend that administrative remedies were unavailable to him. Since the PLRA requires only exhaustion of administrative remedies "as are available," Plaintiff suggests his obligation to fully exhaust administrative remedies was excused by Defendants' conduct.

"The PLRA's use of the phrase 'as are available' implies that if the prison has taken action to make its administrative remedies unavailable, the prisoner has no obligation to pursue them." *Brown v. Blackwell*, 2011 WL 63595 at *2 (S.D. Ohio Jan. 6, 2011). However, "[i]f the inmate who has not exhausted is unable to show, as a matter of fact, that it was the prison which thwarted the inmate's good faith efforts to exhaust available prison remedies, the Court will be required to dismiss the case under § 1997e(a)." *Id*. at *3. Mere general assertions that a prisoner was prevented from exhausting his administrative remedies, without "specific factual allegations about the type of conduct that prevented them from using or completing the respective grievance procedure," are not enough. *Cullins v. Page*, Case No. 1:12-cv-102, 2013 WL 214848 (S.D. Ohio Jan. 18, 2013) (Doc. 18, Report and Recommendation) (Litkovitz, MJ).

5

Plaintiff must show that the remedies were unavailable because the Defendants thwarted his good faith efforts to follow administrative procedures, not merely that the Defendants did not provide him with the necessary forms. *See Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (holding that inmate had failed to exhaust his administrative remedies even though inmate argued that exhaustion was futile because "his counselor did not give him the grievance form"). "At a minimum, [the inmate] must attempt to file a grievance without a form." *Freeman v. Voorhies*, No. 1:06-cv-622, 2006 U.S. Dist. LEXIS 101022, at *12 (S.D. Ohio Oct. 19, 2006).

In this case, Plaintiff alleges that three specific actions or omissions on the part of Defendants prevented him from complying with Ohio's grievance procedures: (1) while at LeCI he was never given instruction on how to use the inmate grievance procedure; (2) multiple requests to see 5120-9-31 and/or the required forms were ignored; and (3) access to 5120-9-31 in the LeCI's law library was not reasonable due to the length of time it took to get permission to use the computers. (Doc. 15). However, Plaintiff's allegations do not survive scrutiny. Defendants have presented unrefuted evidence that the prison grievance procedures were not only readily available, but that they either were, or should have been, known to Plaintiff in this case.

First, Plaintiff's allegations regarding his lack of knowledge or "instruction" concerning the grievance procedure, and contention that he was denied the "required forms," are belied by records that reflect that Plaintiff has filed multiple grievances on at least two different types of grievance forms during his incarceration. In addition, Plaintiff signed two Inmate Orientation Checklists while incarcerated at other institutions. (Doc. 17, Ex. 8). Each of those forms reflects Plaintiff's receipt of the "Verbal/Written

6

Explanation of the Grievance System" at those prior facilities.  Even though Plaintiff disputes receipt of the same procedures at LeCI, those procedures- codified in OAC 5120-9-31 and applicable to all Ohio prison facilities - did not change between the date Plaintiff previously was advised of them and the filing date of the instant Complaint.

Moreover, regardless of the level of Plaintiff's specific instruction at LeCI, the grievance procedures are set out in detail in a copy of the "Inmate Manual" located in every housing unit at LeCI:

> The inmate grievance procedure is very accessible to inmates at LeCI.  I meet with orientation inmates weekly to explain the procedure, and the procedure is explained in detail in the Inmate Manual.  Copies of the Inmate Manual are available in all of the units as well as the library.

(Doc. 17, Affidavit of Daniel Hudson, ¶ 4).  Plaintiff does not deny that the Inmate Manual was accessible to him.  The manual is clear and straightforward in explaining the requirements of the grievance procedure.

What Plaintiff complains of most vigorously was that he was denied adequate access to a copy of the formal regulation, OAC 5120-9-31, because it was not provided to him and is not "on display" or openly "posted."[4]  (Doc. 16 at 2, 4).  However, the procedure laid out in OAC 5120-9-31 is the same grievance procedure set forth in the Inmate Manual.  In fact, a prior informal complaint form completed by Plaintiff at LeCI in March 2010, more than a year prior to the events at issue here, references both the regulation and specific provisions set forth in the Inmate Manual.  In his March 26, 2010 Informal Complaint, Plaintiff complained that medical staff were acting "in defiance of

---

[4]Most of Plaintiff's evidence documents efforts to obtain a copy of Ohio Administration Code 5120-9-31 after the filing of this federal Complaint.  (Doc. 16, Ex. 1).  However, such evidence is immaterial to whether Plaintiff exhausted his administrative remedies before he filed the present lawsuit.

Administrative Rule 5120-9-31 of the Ohio Revised Code." (Doc. 17-17 at 1). On the same form, Plaintiff further charged that: "Without question at LeCI the 'Guarantee Against Reprisals' and 'Confidentiality' subsections[5] of DRC's Inmate Grievance Procedure are fictitious," because two LeCI employees have failed to "enforce the strict standards enacted to prevent…revenge against inmates using the civilized grievance procedure." (Doc. 17-17 at 2). This record evidence confirms Plaintiff's familiarity with the grievance process set forth in the Inmate Manual. That process is substantively identical to OAC 5120-9-31, rendering spurious Plaintiff's argument that an institutional failure to provide him access to the text of OAC 5120-9-31 somehow denied him available grievance procedures.[6]

Second, the majority of Plaintiff's evidence in support of his allegation that he was denied the proper forms was generated *after* the filing of this lawsuit and therefore is not probative on whether Defendants denied him forms prior to suit. Contradicting that contention,[7] Plaintiff filed multiple informal complaints (on the correct forms) relating to the subject matter of this lawsuit. There is no evidence that he made any attempt to timely appeal his first two informal grievance forms.

Two pieces of evidence provide minimal support for Plaintiff's allegations, but are

---

[5] The Inmate Manual at LeCI uses the phrases "Guarantee Against Reprisals" and "Confidentiality" as captions for two separate subsections of the grievance procedure.

[6] It is possible that Plaintiff became confused (in 2011) by the general reference in the Manual to "AR 5120-9-31." While the grievance procedure in the Manual is substantively identical to OAC 5120-9-31, the Manual does not cite pertinent Code sections when discussing each grievance step. (See Doc. 17, Ex. 7). Although Plaintiff is extremely articulate, his records include reference to his treatment for mental illness. Confusion, misunderstanding or mistake by an inmate does not excuse a failure to exhaust, so long as the Defendants have not thwarted an inmate's ability to exhaust available remedies.

[7] Plaintiff also complains that at a July 13, 2011 meeting between Plaintiff, the Deputy Warden, and Inspector Hudson in response to a faxed complaint to the prison from his family members, prison authorities failed to volunteer a copy of grievance procedures, although he does not allege that he made any specific request. (Doc. 16 at 2). That meeting occurred after Plaintiff had already filed two informal grievances on the proper forms.

insufficient to establish any genuine issue of material fact in the face of overwhelming evidence presented by Defendants that they did not prevent exhaustion.  On August 10, 2011, Plaintiff filed a Notification of Grievance against the Warden[8] wherein he checked "No" next to the statement "I have read Administrative Regulation 5120-9-31," and wote, "I asked inspector where to find the AR but got no answer."  (Doc. 14-5 at 1).  Plaintiff's third (August 23, 2011) informal grievance form also supports Plaintiff's allegation that he requested a copy of 5120-9-31, by asking where he can "find" 5120-9-31.

      Notably, neither form establishes any intent to appeal the July or August informal grievances, or seeks any particular form, but instead only requests the text of 5120-9-31 (the substance of which, as discussed, was contained in the Inmate Manual).  Defendant Brunsman responds on the August 23 informal grievance with a notation explaining that OAC 5120-9-31 governs further "appeal" of the informal grievance process.  More than a month later, on October 5, 2011, Plaintiff first wrote to request a specific "form" - the form used to file a complaint against the warden.  Hudson responded not only by providing the correct form, but also by detailing the separate grievance procedure for filing a complaint against the warden.  (Doc. 17, Ex. 9).  This evidence undermines Plaintiff's suggestion of futility, because it reflects the opposite of an attempt to thwart Plaintiff's good faith efforts to exhaust.  Moreover, *Jones v. Smith*, 266 F.3d 399, makes clear that the mere failure of prison officials to provide forms does not excuse a failure to exhaust.

      As a third rationale for his failure to exhaust, Plaintiff complains that even if the

---

[8]This particular form is part of the grievance process used to grieve a dispute with the Warden himself and procedurally, is distinct from the process used to grieve disputes against other prison staff members.

text of OAC 5120-9-31 could be accessed through the prison library computer, the wait time for computer use was too long.  However, Plaintiff offered no evidence that he made any effort to gain access to that resource.  And again, access to the regulatory text was irrelevant given that: (1) Plaintiff previously cited to the substance of the regulation in his March 2010 grievance; (2) Plaintiff acknowledged receipt of grievance procedures at other institutions; and (3) the substance of OAC 5120-9-31 was contained in the Inmate Manual.  Thus, none of the reasons cited by Plaintiff is sufficient to excuse his failure to exhaust, or to overcome the clear evidence offered by Defendants that they did not prevent Plaintiff from complying with the PLRA's exhaustion requirement.

### 3. Claims Against Mohr, Hoffman, Sparks, Green, and Kahn

The procedure for filing a grievance against Defendants Mohr, Hoffman, Sparks, Green, and Kahn is set forth in Ohio Administrative Code 5120-9-31(K).  The first step of the three-step process allows the inmate to file an informal complaint to the direct supervisor of the department or staff member responsible for the subject matter of the complaint.  Ohio Admin. Code 5120-9-31(K)(1).  The complaint must be filed within fourteen days of the events giving rise to the complaint, and the supervisor has 7 days to respond in writing to the complaint.  *Id.*

If the inmate is dissatisfied with the response to step one, he can proceed to the second step of the process by obtaining a notification of grievance form from the inspector of institutional services.  Ohio Admin. Code 5120-9-31(K)(2).  That second-stage form must be filed within fourteen days from the date of the informal complaint response and the institutional inspector must respond in writing within fourteen days of receiving that second-step grievance. *Id.*  If the inmate is still dissatisfied, the inmate

may proceed to the third and final step by requesting an appeal form from the inspector of institutional services. The appeal form must be filed with the Office of the Chief Inspector within fourteen days of the date of the disposition of the second-step grievance. Ohio Admin. Code 5120-9-31(K)(3). The Chief Inspector must respond in writing within thirty days of receiving the appeal; the decision of the Chief Inspector is final. *Id.*

Plaintiff filed three informal complaints (*See* Doc. 14, Ex. 1,2,3), all at the first step of the grievance procedure. However, Plaintiff never proceeded to steps two and three of the grievance procedure. There is no evidence that Plaintiff made any attempt to appeal either of his first two informal grievances, dated July 1 and July 7, 2011. Plaintiff's third informal complaint, dated August 23, 2011, appears to be a new complaint concerning "retaliation," in the form of an adverse inmate disciplinary proceeding, arising out of his two earlier July informal complaints. Each of the three forms completed by Plaintiff contains, in italicized language at the bottom of the form, the statement: "Complaints not resolved may be addressed in accordance with 5120-9-31." At the bottom of his August "retaliation" form alleging unjust discipline, Plaintiff writes "where in the world can I find 5120-9-31?" The response states: "this is an appeal issue and not an informal [complaint]." (Doc. 14-4). For the reasons previously discussed, this single request is not sufficient to show that Defendants made the appeal procedure "unavailable."

There is no evidence that Plaintiff attempted to file any type of appeal with the institutional inspector for either of the two July informal grievances, or within fourteen days of the denial of his August 23, 2011 informal grievance, as required under step two

11

of the process. The question is not whether Plaintiff subjectively believed a grievance procedure to be unavailable, but whether objectively, the procedures were "unavailable" due to the actions of prison officials. The record does contain evidence that at some point, Plaintiff filed a third-step Notification of Grievance, received by Chief Inspector Croft on October 28, 2011. However, that form does not excuse Plaintiff's failure to complete the second step for his three prior informal grievances. Thus, Plaintiff clearly did not exhaust all available administrative remedies.

This case is distinguishable from *Lyons v. Heyd*, 2012 WL 5378308 (S.D. Ohio Oct. 31, 2012), a recent decision in which the same district judge assigned to this case partially denied summary judgment to a doctor at LeCI, based upon genuine issues of material fact as to whether the plaintiff's efforts to exhaust were frustrated by prison staff. *Id.* at *5-8. Unlike this record, in *Lyons* the plaintiff provided evidence that he had submitted a complaint, which prison officials denied having received. *Id.* at *5. A dispute existed as to whether the inspector had responded to the plaintiff's grievance. Additionally, there was some evidence that the plaintiff's case manager had provided erroneous instructions on how to file a Notification of Grievance. *Id.* at *7.

By contrast, Plaintiff has presented no evidence to excuse his failure to comply with the appeal portions of the process applicable to grievances against most staff members. This is not a case where prison authorities utterly failed to respond to a grievance, or provided erroneous advice as to the correct procedures. *Cf. Dowd v. Smoot*, 2011 WL 7394670 (S.D. Ohio R&R filed 9/14/11, adopted 2/16/12)(suggesting that administrative remedies are "unavailable" if officials do not timely respond). Because Plaintiff failed to properly follow the second and third steps of the appeals

12

process concerning his July and August 2011 informal grievances, summary judgment should be granted in favor of Defendants Mohr, Hoffman, Sparks, Green, and Kahn.

### 4. Defendants Brunsman and Hudson

The procedure for filing a grievance against a warden (Brunsman) or an inspector of institutional services (Hudson) is distinct from the three-step procedure for pursuing a grievance against other prison employees, providing more of a single-step process. Ohio Administrative Code 5120-9-31(M) requires a grievance against the warden to be "filed directly to the office of the chief inspector within thirty calendar days of the event giving rise to the complaint." *Id.* A Direct Grievance must show that the warden and/or inspector were "personally and knowingly involved in a violation" or "personally and knowingly approved or condoned such a violation." *Id.* Finally, "the chief inspector. . . shall respond in writing within thirty calendar days of receipt of the grievance." *Id.* This administrative procedure conforms to the legal principle that the civil rights laws do not impose liability under a theory of respondeat superior. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability.") (internal citations omitted).

The record reflects that Plaintiff filed one Direct Grievance with the Office of the Chief Inspector concerning his fire watch duties. Based on 5120-9-31(M), that is the only grievance that could apply to Defendants Brunsman and Hudson. Plaintiff used the correct form – a form that differs from the informal complaint forms he completed for his earlier July and August grievances against other prison employees. (Doc. 14. Ex. 5). The Office of the Chief Inspector documented receipt of the Direct Grievance on October 28, 2011, and copied Plaintiff with that notice. (Doc. 14-1, Croft Declaration ¶

13

11).  According to 5120-9-31(M), and consistent with the notation at the top of Plaintiff's Direct Grievance, Chief Inspector Croft was required to respond within 30 days—by November 27, 2011. (Doc. 14, Ex. 6).  He responded on November 16, 2011, well within the required period.  (Doc. 14, Ex. 6).

That timing proves fatal to Plaintiff's claim.  By the plain wording of 5120-9-31(M), Chief Inspector Croft had 30 days to respond to Plaintiff's direct grievance.  When Plaintiff filed suit in this Court on November 15, 2011, he did so prior to receipt of Croft's response on November 16, 2011, and prior to the expiration of the 30 day period.  In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court held that the plaintiff does not properly exhaust all available administrative remedies when he files a federal complaint "before allowing the administrative process to be completed." Likewise, because Plaintiff filed the instant complaint a day prior to resolution of his Direct Grievance, he did not allow for the administrative process to be completed, and thus did not fairly exhaust his administrative remedies.  For that reason, summary judgment also should be granted to Warden Brunsman and Inspector Hudson.

### III.  Conclusion

For the reasons stated, **IT IS RECOMMENDED** that Defendants' motion for summary judgment (Doc. 14) be **GRANTED in its entirety** and that this matter be **TERMINATED** from the active docket of the Court**.**

             *s/Stephanie K. Bowman*
             Stephanie K. Bowman
             United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

GREGORY S. WILLIS,

       Plaintiff,                              Case No. 1:11-cv-808

vs.                                       Barrett, J.
                                                  Bowman, M.J.

GARY MOHR, *et al.*,

       Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).