# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| GREGORY S. WILLIS, | CASE NO.: 1:11-cv-808 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| GARY MOHR, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Gregory Willis's Motion to Clarify (Doc. 29), Defendants' response in opposition (Doc. 31), and Plaintiff's reply (Doc. 32), as well as Plaintiff's May 1, 2013 objections to the Magistrate Judge's March 26, 2013 Report and Recommendation (Doc. 27).

## I. BACKGROUND

The factual background of the case is adequately set forth in the Magistrate Judge's Report and Recommendation (Doc. 19) and will not be repeated here. However, the Court will reference the facts upon which it relies where relevant to the analysis.

As for the procedural background, Plaintiff initiated this lawsuit on November 15, 2011 against Defendants Robert Green, David Hoffman, Dan Hudson, Anthony Kahn, Gary Mohr, Jody Sparks, and the Warden of Lebanon Correctional Institution ("LeCI"). (Doc. 1). On November 15, 2012, Defendants filed a motion for summary judgment, arguing that Plaintiff had failed to exhaust his administrative remedies prior to filing the lawsuit. (Doc. 14). On March 26, 2013, the Magistrate Judge issued a Report and

1

Recommendation granting Defendants' motion for summary judgment. (Doc. 19). Specifically, the Magistrate Judge determined that Plaintiff is not excused from the exhaustion requirement, that the claims against Mohr, Hoffman, Sparks, Green and Kahn were not exhausted under the three-step grievance procedure, and that the claims against Warden Brunsman and Institutional Inspector Hudson were not exhausted under the single-step process.

The objections to the Report and Recommendation were due on April 12, 2013. (Doc. 19). Plaintiff, however, filed a motion for extension of time to file objections up to and including April 29, 2013, which the Court granted (Docs. 22, 23). Plaintiff's objections were not entered on the docket on or before April 29, 2013. On May 1, 2013, the Court entered an Order adopting the Report and Recommendation, and thus, granting summary judgment to Defendants. (Doc. 25). On the same day, Plaintiff's objections to the Report were entered on the docket. (Doc. 27).

Subsequently, Plaintiff filed a motion to clarify in which he claims that he placed the objections into the prison mail system on April 26, 2013 such that his objections were timely. (Doc. 29). Defendants objected, arguing that Plaintiff's objections were untimely and should not be considered under Federal Rules of Civil Procedure 59 or 60.

## II. MOTION TO CLARIFY

Given that Plaintiff was incarcerated at LeCI at the time his objections were due, the prison mailbox rule was applicable. Under the prison mailbox rule, prisoner documents are deemed filed in federal court when submitted to prison officials for mailing. *Keeling v. Warden, Leb. Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012) (citing *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S.

266, 270-76, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988)). Applying that rule to this case, Plaintiff's objections must have been submitted to prison officials on or before April 29, 2013 to be deemed timely filed.

Based upon the record, the Court finds that Plaintiff's objections were timely filed. His affidavit was signed on April 25, 2013. (Doc. 27, p. 21). In his motion, Plaintiff asserts that he submitted his objections to the prison officials for mailing on April 26, 2013. (Doc. 29, p. 1). The certificate of service attached to Plaintiff's objections reflects a date of April 28, 2013 for mailing to Defendants. (Doc. 27, pp. 15, 22). The Court received his objections on May 1, 2013, just two days after the filing deadline. (Doc. 27). Based on that evidence on the whole, the Court finds that Plaintiff has demonstrated that his objections were submitted to prison officials for mailing on or before the April 29, 2013 deadline. Thus, his objections are deemed timely filed, and the Court withdraws its May 1, 2013 Order adopting the Report and Recommendation (Doc. 25). The Court now will consider the Report and Recommendation in light of Plaintiff's objections (Doc. 27).

## III. OBJECTIONS TO REPORT

### A. Standards of Review

#### 1. De novo review of objections

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the

magistrate judge with instructions." *Id.; see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to preserve any issues for review: "[a] general objection to the entirety of the magistrate [judge]'s report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Nevertheless, Plaintiff's *pro se* objections will be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

### 2. Summary judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 1065 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at

249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential of that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Analysis

Plaintiff objects to the Magistrate Judge's Report on the bases that she erred in concluding that (1) he did not exhaust his administrative remedies; (2) he was not excused from the exhaustion requirement; and (3) November 27, 2011 was the deadline for the Chief Inspector to resolve the Direct Grievance. (Doc. 27, pp. 1-2). Having reviewed the Magistrate Judge's Report *de novo* in light of the objections, the Court finds the Report to be thorough, well-reasoned and correct.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, *et seq.*, a prisoner is required to exhaust all available state administrative remedies before filing suit in federal court to challenge conditions of confinement. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). As such, exhaustion is a mandatory prerequisite to a prisoner filing a civil rights lawsuit in federal court. What constitutes proper exhaustion is defined by the state prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). "Failure to exhaust is an affirmative defense under

5

the PLRA." *Id.* at 216. Defendants bear the burden of proving the failure of a prisoner to properly exhaust all administrative remedies. *Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011).

Ohio's procedures for an inmate to file a grievance are set forth in Ohio Administrative Code 5120-9-31. The inmate grievance procedure for claims against most prison employees is comprised of three consecutive steps. Ohio Admin. Code 5120-9-31(K). The first step allows an inmate to file an informal complaint to the direct supervisor of the department or staff member responsible for the subject matter of the complaint. Ohio Admin. Code 5120-9-31(K)(1). The informal complaint must be filed within fourteen calendar dates of the events giving rise to the complaint, and the supervisor has seven days from receipt of the informal complaint to respond in writing to the complaint. *Id.* If a response is not provided within a reasonable time, then the inmate "should immediately contact the inspector of institutional services either in writing or during regular open office hours" and the inspector of institutional services "shall take prompt action to ensure that a written response is provided to the informal complaint within four calendar days." *Id.* If a response is not provided by the end of that fourth day, the informal complaint step is automatically waived. *Id.* The filing of an informal complaint also may be waived where a complaint is filed pursuant to 5120-9-04 of the Ohio Administrative Code. *Id.*

If the inmate is dissatisfied with the response to step one, he can proceed to the second step of the process by obtaining a notification of grievance form from the inspector of institutional services. Ohio Admin. Code 5120-9-31(K)(2). The form for the appeal must be filed by the inmate no later than fourteen calendar days from the date of

6

the informal complaint response or the waiver of the informal complaint step. *Id.* The inspector of institutional services must provide a written response to the grievance within fourteen calendar days of receipt of the second-step grievance form. *Id.*

If the inmate still is dissatisfied, he may proceed to the third and final step by requesting an appeal form from the inspector of institutional services. Ohio Admin. Code 5120-9-31(K)(3). The appeal form must be filed with the office of the chief inspector within fourteen calendar days of the date of the disposition of the grievance. *Id.* The chief inspector must provide a written response within thirty calendar days after receiving the appeal form. *Id.* The decision of the chief inspector is final. *Id.*

Separate from the three-step process is Ohio's procedure for inmates to file grievances against the warden or inspector of institutional services. Ohio Admin. Code 5120-9-31(M). Those grievances must be filed directly to the office of the chief inspector within thirty calendar days of the event giving rise to the complaint, and must show that the warden or inspector of institutional services was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation. *Id.* The chief inspector must respond in writing to a direct grievance within thirty calendar days of receipt of the grievance. *Id.* The chief inspector's decision is final. *Id.*

### 1. First objection

Plaintiff objects to the Magistrate Judge's conclusion that he failed to exhaust his administrative remedies. His objection is based on three main arguments, which are individually addressed below.

7

> a. Alleged failure of inspector of institutional services to perform duties does not demonstrate exhaustion under 5120-0-31(K) or (M)

Plaintiff contends that because the inspector of institutional services, Dan Hudson, allegedly failed to perform his duties in accordance with Ohio Administrative Code 5120-9-29, Plaintiff has exhausted his administrative remedies. In particular, he alleges that Hudson was required to, but did not, respond to inmate grievances or facilitate the inmate grievance procedure. As that argument was not raised to the Magistrate Judge, it is waived because a party may not raise arguments for the first time in an objection to a magistrate judge's report and recommendation. *See Becker v. Clermont Cnty. Prosecutor*, 450 F. App'x 438, 439 (6th Cir 2011) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

In any event, Plaintiff's objection is not well taken. Neither the July 1, 2011 informal grievance nor the August 23, 2011 informal grievance was directed to Hudson. (Docs 14-2, 14-4). Under the plain language of the provision of Ohio Administrative Code 5120-9-31 governing step one of the three-step grievance procedure, Hudson was not responsible for responding to that grievance.

As for the July 7, 2011 informal grievance, it was directed to "Major Dann." (Doc. 14-3). Assuming that it was intended to be directed to Hudson, a response from Hudson was required within seven days. The record reflects that a response was made on July 14, 2013 (Doc. 14-3), which is within the allotted time period.

Plaintiff's statement that he does not know whether he received the responses is not significant probative evidence that defeats summary judgment, as the evidence of record demonstrates that such responses were made. (Docs. 14-2, 14-3, 14-4). However, even assuming Plaintiff did not receive the responses, he has presented no

8

evidence that he made affirmative efforts to comply with the administrative process beyond filing an informal grievance, as required by the Sixth Circuit. *Rishner v. Lappier*, 639 F.3d 236, 240 (6th Cir. 2011). In particular, no evidence has been presented that Plaintiff contacted Hudson regarding an alleged lack of response to his informal complaints, that he requested or attempted to request the step two forms from Hudson within the proper timeframe, or that he submitted or attempted to submit a notice of grievance to Hudson within the proper timeframe. As such, he did not proceed beyond the first step of the three-step grievance procedure with respect to the July 1, 2011, July 7, 2011 or August 23, 2011 informal complaint in accordance with Ohio Administrative Code 5120-9-31(K). To the extent Plaintiff claims that he did not know how to grieve under those circumstances because Hudson did not "facilitate the grievance procedure," that question is more appropriately addressed later in this Opinion and Order in regards to whether Plaintiff was excused from exhausting his administrative remedies.

As for any attempt by Plaintiff to argue that those alleged failures by Hudson should be considered by the Court as exhausted complaints against Hudson, his argument is unavailing. None of those complaints were raised against Hudson in the Direct Grievance filed by Plaintiff with the Chief Inspector as required under 5120-9-31(M) of the Ohio Administrative Code. Further, even if those complaints had been raised in the Direct Grievance (which they were not), Plaintiff still would not have satisfied the exhaustion requirement because Plaintiff had not received a decision from the Chief Inspector on his Direct Grievance at the time he filed this lawsuit. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (a plaintiff does not properly

exhaust all available administrative remedies when he files a federal complaint "before allowing the administrative process to be completed").

> b. Alleged failure by inspector of institutional services to conduct an investigation into allegedly "inappropriate supervision" under Ohio Administrative Code 5120-0-04 does not demonstrate exhaustion under 5120-9-31(K) or (M)

Plaintiff appears to argue that his informal complaints should have been, but were not, considered as filed under Ohio Administrative Code 5120-9-04 and that Hudson failed to conduct the proper investigation under that provision. As with the prior argument, those arguments were not raised to the Magistrate Judge and, thus, are waived. *See Becker*, 450 F. App'x at 439 (citing *Murr*, 200 F.3d at 902 n.1). However, even if they were not waived, they must fail.

Plaintiff's arguments appear to be directed to whether he exhausted his administrative remedies with respect to the informal complaints submitted on July 1, 2011, July 7, 2011 and August 23, 2011. In particular, Plaintiff appears to argue that his July 1, 2011, July 7, 2011 and/or August 23, 2011 informal grievances should have been considered notification of grievances submitted under the second step of the three-step grievance process because they implicated 5120-9-04 of the Ohio Administrative Code.

Under 5120-9-31(K)(1) of the Ohio Administrative Code, the filing of an informal complaint "may be waived" if the inspector of institutional services determines that a complaint is brought under 5120-9-04.[1] The provision thus provides the inspector of

---

[1] Ohio Administrative Code 5120-9-04 relates to complaints of "inappropriate supervision." "Inappropriate supervision" is defined as "any continuous method of annoying or needlessly harassing an inmate or group of inmates, including, but not limited to, abusive language, racial slurs, and the writing of inmate conduct reports strictly as a means of harassment[; however,] [a] single incident may, due to its severity or egregiousness, be considered inappropriate supervision for purposes of this rule." Ohio Admin. Code 5120-9-04(B).

institutional services with discretion in making that determination. In this case, there is no evidence that the inspector of institutional services determined that any of the three informal complaints were brought under 5120-9-04. Plaintiff's argument that the July 13, 2011 meeting was an interview under 5120-9-04 fails to persuade the Court otherwise. His statements and speculation as to the purpose of that meeting does not provide significant probative evidence that it constituted an interview concerning a possible complaint of inappropriate supervision. As such, it does not warrant the denial of summary judgment and proceeding to trial on the merits.

The evidence also does not demonstrate that the inspector of institutional services determined that the first step of the three-step procedure should be waived for any of those complaints. Indeed, responses were provided to each of the three informal grievances submitted by Plaintiff. (*See* Docs. 14-2, 14-3, 14-4). Although Plaintiff contends that he may not have received all of those responses, there is no evidence that shows he took the actions set forth in step one for obtaining a decision when no response is received. *See* Ohio Admin. Code 5120-9-31(K)(1). Therefore, even if Plaintiff did not receive a response as he contends, the evidence does not demonstrate a waiver of step one of the three-step grievance procedure.

While somewhat contradictory to his position that he may not have received responses to the informal complaints, Plaintiff also appears to complain that he was dissatisfied with the responses to the informal complaints and/or the alleged failure to undertake the type of investigation set forth in 5120-9-04 of the Ohio Administrative Code. However, under 5120-9-31(K) of the Ohio Administrative Code, the remedy for an inmate that is dissatisfied with the response at step one is to proceed to step two of

the three-step grievance procedure. He did not for any of his three grievances. Nor did he attempt to do so. Thus, this argument does not demonstrate that Plaintiff exhausted his administrative remedies.

       c. Alleged failure by Chief Inspector to perform his duties pursuant to 5120-9-30 of the Ohio Administrative Code does not demonstrate exhaustion under 5120-9-31(K) or (M)

Plaintiff appears to contend that the Chief Inspector failed to, among other things, "[a]dminister all aspects of the grievance procedure for inmates," "[r]ender dispositions on inmate grievance appeals" and "[r]ender dispositions on grievances against the wardens and/or inspectors of institutional services." *See* Ohio Admin. Code 5120-9-30. Apparently, Plaintiff is arguing that such failures are sufficient to demonstrate exhaustion.

Plaintiff's argument must relate to the only grievance sent to the Chief Inspector, which was received by the Chief Inspector's office on October 28, 2011. (*See* Docs. 14-5, 14-6, 14-7). Viewing that grievance as an inmate grievance appeal under 5120-9-31(K)(3) of the Ohio Administrative Code, the Court does not find that Plaintiff exhausted the three-step grievance procedure. Regardless of whether the Chief Inspector rendered a decision on the inmate grievance appeal, Plaintiff, as explained previously, did not comply or attempt to comply with step two of the three-step grievance procedure. He thus did not exhaust his administrative remedies in accordance with 5120-9-31(K) of the Ohio Administrative Code.

Likewise, Plaintiff's argument does not demonstrate exhaustion of a Direct Grievance to the Chief Inspector under 5120-9-31(M) of the Ohio Administrative Code. The Chief Inspector had thirty days from the date of receipt of the Direct Grievance to respond. The undisputed record evidence shows that the Chief Inspector resolved that

12

Direct Grievance one day after Plaintiff filed this lawsuit, which was well within the thirty-day period. Therefore, Plaintiff had not exhausted his administrative remedies at the time he filed this lawsuit. *See Freeman*, 196 F.3d at 645.[2] That timing is fatal to his claims.

To the extent Plaintiff also intends to argue that the Chief Inspector's alleged failures should excuse the exhaustion requirement, that issue is better addressed with respect to the second objection.

### 2. Second Objection

Plaintiff's second objection relates to the Magistrate Judge's conclusion that he was not excused from exhausting his administrative remedies because there were administrative remedies that remained reasonably available to him. For the reasons explained below, his objection is overruled.

As the Magistrate Judge correctly noted, a prisoner has no obligation to pursue administrative remedies that the prison has made unavailable. *Brown v. Blackwell*, No. 2:10-cv-966, 2011 U.S. Dist. LEXIS 1189, at *5-6 (S.D. Ohio Jan. 6, 2011). However, "[i]f the inmate who has not exhausted is unable to show, as a matter of fact, that it was the prison which thwarted the inmate's good faith efforts to exhaust available prison remedies, the Court will be required to dismiss the case under § 1997e(a)." *Id.* at *7. General allegations of futility are insufficient to show remedies are unavailable. *Napier v. Laurel Cnty.*, 636 F.3d 218, 224 (6th Cir. 2011). The Sixth Circuit requires affirmative

---

[2] Although the issue ultimately was deemed not grievable through the inmate grievance process, Plaintiff had other properly available administrative remedies for appealing the RIB decision that he did not exhaust. *See* Ohio Admin. Code 5120-9-08(O)-(P). No evidence has been presented that Plaintiff exhausted or attempted to exhaust those administrative remedies. Therefore, the evidence does not demonstrate exhaustion of that issue under those separate appeal provisions. *See Owens v. Keeling*, 461 F.3d 763, 770-72 (6th Cir. 2006) (considering whether Plaintiff exhausted administrative remedies when his complaint was not grievable through the inmate grievance process but instead had to be addressed under the classifications appeal process).

efforts to comply with the applicable grievance procedures. *Rishner v. Lappier*, 639 F.3d 236, 240 (6th Cir. 2011).

First, Plaintiff asserts that he tried to file a grievance on the proper form to the Ohio Department of Rehabilitation and Correction's ("ODRC") "Top Dog[]s" such that he did what he was supposed to do to start the process in motion. He claims that makes his case similar to *Lyons v. Heyd*, No. 12-cv-324, 2012 U.S. Dist. LEXIS 155949 (S.D. Ohio Oct. 31, 2012), where this Court determined that inmate attempted to exhaust his administrative remedies when he attempted to file an appeal even though it was not on the proper form. Here, Plaintiff's argument presumably is directed towards the grievance he sent to the Chief Inspector of the ODRC, Gary Kroft. However, unlike in *Lyons*, there is no dispute over whether Plaintiff submitted his Direct Grievance to the Chief Inspector on the proper form, nor is there a dispute as to whether that Direct Grievance was received by the Chief Inspector.[3] Rather, the Magistrate Judge pointed out was that Plaintiff failed to comply with the second step of the three-step procedure prior to any appeal to the Chief Inspector, a conclusion with which the undersigned has agreed. The Magistrate Judge also correctly determined that Plaintiff filed this lawsuit before receiving a response and before the time period had expired for the response to that grievance such that his claim was not exhausted at the time he filed this lawsuit.

Pursuant to Ohio Administrative Code 5120-9-31(M), the chief inspector or designee must "respond in writing within thirty calendar days of receipt of the grievance." Here, the Chief Inspector received Plaintiff's Direct Grievance on October

---

[3] The majority of Plaintiff's evidence in support of his allegation that he was denied the proper forms was generated after the filing of the instant lawsuit. While there is evidence that on October 5, 2011 he wrote to request a specific form to file a complaint against the warden, Hudson responded by providing the correct form and by detailing the separate grievance procedure for filing a complaint against the warden. (Doc. 17, Ex. 9).

14

28, 2011. (Doc. 14-7). He had thirty days thereafter to respond to Plaintiff's Direct Grievance. Ohio Admin Code 5120-9-31(M). That means that after Plaintiff had filed his Direct Grievance with the Chief Inspector, he still had to wait until he received a response or until the expiration of the response period before his administrative remedies could be exhausted. Plaintiff, however, initiated this lawsuit on November 15, 2011, prior to the expiration of that time period and prior to receiving a response. It was not until one day after Plaintiff initiated this lawsuit that the Chief Inspector resolved the Direct Grievance. As Plaintiff did not allow the administrative process to be completed before filing his federal lawsuit, he may not now proceed on those unexhausted claims. *Freeman*, 196 F.3d at 645.

Second, Plaintiff's arguments that the warden, inspector of institutional services or the chief inspector thwarted his ability to comply with the procedures by failing to advise him of the grievance procedures or by failing to volunteer a copy of the grievance procedures at the July 13, 2011 meeting are unavailing. The Sixth Circuit has rejected the argument that the failure of a facility to explain the grievance policy or the PLRA excused the inmate's failure to exhaust. *See Napier v. Laurel Cnty.*, 636 F.3d 218, 221-22 n. 2 (6th Cir. 2011) ("A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy.") (citing *Brock v. Kenton Cnty.*, 93 F. App'x 793, 797-98 (6th Cir. 2004) (rejecting inmate's argument that exhaustion should be excused because inmates were not aware of the jail's grievance system)); *see also Thomas v. McDowell*, No. 2:10-cv-152, 2013 U.S. Dist. LEXIS 130517, at *10-11 (S.D. Ohio Sept. 12, 2013) (rejecting plaintiff's argument that his failure to properly exhaust his administrative remedies should be excused because the institution did not inform

15

him how to participate in the informal complaint, grievance and appeal process, and that he was unaware that the failure to properly exhaust his administrative remedies would result in the dismissal of his federal claims under the PLRA); *Albino v. Baca*, 697 F.3d 1023, 1035-37 (9th Cir. 2012) (inmate's ignorance of grievance procedure and prison's failure to inform inmate of procedure does not make grievance procedure unavailable); *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 272-73 (10th Cir. 2003) (concluding that the district court did not err in rejecting prisoner's claim that his unawareness of the grievance procedure excused the PLRA's exhaustion requirement). Further, as the Magistrate Judge noted, Plaintiff had been instructed on the grievance procedure prior to being transferred to LeCI, and that procedure had not changed during the time Plaintiff was incarcerated.[4] The Inmate Manual, which sets forth the grievance procedure and which is substantially identical to 5120-9-31, also was available in every housing unit of LeCI. Plaintiff's lack of understanding as to the similarity of the two does not excuse his failure to exhaust his administrative remedies. *See Napier*, 636 F.3d at 221-22 n.2 ("A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy.").

Third, Plaintiff cannot succeed on any argument that proceeding to step two of the three-step grievance procedure would have been futile. As stated above, general allegations of futility are insufficient. *Napier*, 636 F.3d at 224. Plaintiff must have made affirmative efforts to comply with the applicable grievance procedures. *See Risher*, 639

---

[4] Although Plaintiff notes that he was not instructed on the grievance procedure at LeCI when he arrived, he does not dispute that he had prior instruction on the grievance procedure before being transferred to LeCI. The prior instruction provided notice or constructive notice as to the existence of a grievance system and, at a minimum, provided Plaintiff with some understanding of what efforts he should attempt to take to exhaust his administrative remedies.

16

F.3d at 240. As previously explained, he did not make such efforts to comply. He thus was not excused from exhausting his administrative remedies based upon allegations of futility.

### 3. Third objection

Plaintiff's third objection concerns the deadline for responding to the Direct Grievance. Plaintiff claims that because his administrative remedies were unavailable, he was excused from pursuing the exhaustion requirement as of July 13, 2011, the date on which Plaintiff contends he was not advised of the grievance process. He states that at the latest, his remedies were exhausted on August 12, 2011, which is thirty days after July 13, 2011. He says that "was more than enough time for the institutional inspector to provide plaintiff with his findings" and is also the amount of time the Chief Inspector had "to administer all aspects of the grievance procedure for inmates." (Doc. 27, p. 14).

The Court disagrees. As explained above, Plaintiff was not excused from exhausting his administrative remedies. Thus, he did not exhaust the three-step process for the July 1, 2011, the July 7, 2011 or the August 23, 2011 informal complaints. As for the Direct Grievance, the Chief Inspector received that Direct Grievance on October 28, 2011. Pursuant to 5120-9-31(M), he had thirty days *from receipt* of the Direct Grievance to respond. Given that Plaintiff filed the lawsuit one day prior to the resolution of his Direct Grievance, he had not exhausted his administrative remedies at the time the lawsuit was filed. That timing is indeed fatal to his claim. *Freeman*, 196 F. 3d at 645.

## IV. CONCLUSION

Consistent with the foregoing, it is **ORDERED** that:

1. Plaintiff's Motion to Clarify (Doc. 29) is **GRANTED** and Plaintiff's objections (Doc. 27) are deemed timely filed.  Accordingly, the Court's May 1, 2013 Order adopting the Report and Recommendation (Doc. 25) and the concurrently filed judgment (Doc. 26) are hereby **WITHDRAWN**.

2. Having considered the Report and Recommendation in light of Plaintiff's objections, the Court orders that Plaintiff's objections (Doc. 27) are **OVERRULED** and the Report and Recommendation (Doc. 19) is **ADOPTED** in its entirety.

3. Consistent with this Order and the Report and Recommendation, Defendants' Motion for Summary Judgment (Doc. 14) is **GRANTED** in its entirety.

4. This matter shall be **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED**.

                                                s/ Michael R. Barrett
                                                Michael R. Barrett, Judge
                                                United States District Court